**In re BURNSIDE STEEL FOUNDARY COMPANY, an Illinois corporation, Debtor.**

**Bankruptcy No. 82 B 5968.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Sept. 20, 1988.

David A. Golin, Winston & Strawn, Chicago, Ill., for debtor.

Bernard Chaitman, Park Ridge, Ill., Trustee.

## MEMORANDUM, OPINION & ORDER

ROBERT E. GINSBERG, Bankruptcy Judge.

This matter comes before the Court on the Court's order of April 20, 1988 under 11 U.S.C. § 329 and Bankruptcy Rule 2017 requiring Winston & Strawn ("W & S"), counsel for Burnside Steel, the debtor in this case, to show cause why it should not be required to return the $35,000 prepetition retainer it received from the debtor before filing a Chapter 11 case which ultimately failed. The rule issued in light of W & S's failure to file a fee application prior to the closing of the ensuing Chapter 7 case. This matter also comes before the Court on W & S's request for leave to reopen the Chapter 7 case and its application for allowance of final compensation and reimbursement of expenses filed on August 16, 1988.

FACTS

In 1982 when Burnside Steel Foundary Company found itself in serious financial difficulties, it turned to one of Chicago's leading bankruptcy law firms, Nachman, Munitz and Sweig ("NM & S") for legal advice. Apparently, NM & S recommended that Burnside file a Chapter 11 petition and requested a $35,000 retainer for the services which NM & S was to render in representing Burnside in the soon to be filed Chapter 11 proceeding. Burnside gave NM & S the $35,000 retainer, and on May 6, 1988 Burnside filed a Chapter 11 petition. NM & S filed a statement of fees pursuant to Bankruptcy Code § 329(a) and Bankruptcy Rule 2016(b). The statement of fees fully disclosed the $35,000 prepetition retainer paid to NM & S by Burnside.

NM & S represented Burnside as debtor in possession until February 21, 1985 when the case was converted to Chapter 7. NM & S (which subsequently merged into W & S) continued to represent Burnside in the Chapter 7 case until April 4, 1988 when this Court approved the Chapter 7 trustee's final report and ordered this case closed. W & S did not file a fee application prior to the closing of the case. On April 20, 1988, this Court reopened the case and ordered W & S to show cause why it should not be required to refund the $35,000 retainer.

DISCUSSION

As far as this Court can ascertain, the instant problem is one of first impression in this district. Nevertheless, the problem presented is chronic. A law firm receives a

large retainer before filing a Chapter 11 petition. The Chapter 11 petition is filed. The case fails and is converted to Chapter 7. The Chapter 7 case is closed without any judicial determination whether the debtor's attorney ever rendered services in connection with the case sufficient to earn the right to keep the entire retainer.

This Court has previously held that a retainer paid by the debtor to its attorney prior to the commencement of a Chapter 11 case remains property of the estate until awarded to the attorney by court order on appropriate application, notice and hearing. *In re Chicago Lutheran Hospital Association,* 89 B.R. 719 (Bkrtcy.N.D.Ill.1988) In *Chicago Lutheran,* this Court determined that the typical retainer paid to a debtor's attorney in a Chapter 11 case is intended to secure future payment of attorney's fees awarded by the Court. In the event the Court orders such an award, and the debtor does not have the cash to pay the award, the retainer insures payment. If the case fails and is converted to Chapter 7, the retainer enables the debtor's attorney to avoid the subordination of the Chapter 11 expenses of administration to those incurred in administering the Chapter 7 estate mandated by § 726(b) of the Bankruptcy Code.

The reason why this result obtains is simple. The debtor's attorney who receives a prepetition retainer to insure payment of fees to be earned in the Chapter 11 case (or postpetition retainer authorized by court order) becomes a secured creditor, secured by a possessory security interest in cash. *Cf.* U.C.C. § 9–305 (1978), Ill.Rev. Stat. ch. 26, ¶ 9–305 (1987) (perfection by possession). There is nothing theoretically different between the attorney who receives a retainer against future fees and a landlord who takes a cash security deposit to secure the payment of future rents. The reason that the retainer succeeds in avoiding the subordination requirements of § 726(b) is that § 726 only affects distribution priorities among holders of unsecured claims, and an attorney with a retainer is, to the extent of the retainer, the holder of a secured claim. Of course, there is nothing per se wrong with a debtor's attorney

taking security for fees. *See In re Martin,* 817 F.2d 175 (1st Cir.1987).

Clearly the retainer, if excessive, is subject to turnover pursuant to Bankruptcy Code § 329 and Bankruptcy Rule 2017. Even if it is not excessive, the court can order the retainer to be turned over to the trustee under § 363 of the Bankruptcy Code if the attorney can be provided with other adequate protection for fees to be earned in the bankruptcy case. *See In re Chicago Lutheran.* This is true because until the fees are awarded to the attorney upon proper application under § 330 of the Bankruptcy Code and Bankruptcy Rule 2016 after notice and hearing, the retainer is property of the estate which the debtor or trustee can use. *See United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).

This view is consistent with the analysis found in the relevant caselaw dealing with the status of prepetition retainers after a petition is filed.

> ... to allow an attorney for a debtor to draw against a retainer at will and without prior court approval is a *de facto* emasculation of § 331, which sets forth precise criteria concerning an application for and payment of interim compensation. (footnote omitted) Any payment to counsel before closing of the case is by definition interim compensation, and to allow counsel to receive payments, whether consisting of unilateral draws from a prepetition retainer or outright post petition cash transfers, without notice to the creditors and approval by the Court, is blatantly inconsistent with the statute, and such practices will be neither condoned nor permitted by this Court.

*In re Chapel Gate Apartments, Ltd.,* 64 B.R. 569, 573 (Bankr.N.D.Tex.1986).

It is true, as pointed out by W & S, that the court in *Matter of Fulton,* 80 B.R. 1009, 1010 (Bankr.D.Neb.1988), ruled, "absent a court order under Rule 2017, a fee application need not be filed by Debtor's counsel if no compensation is sought beyond that prior to the filing of the bank-

ruptcy petition". However, the retainer in question in *Fulton* was a flat fee of $2,000 paid by the debtor pre-petition to cover all services to be rendered by the attorney in connection with the debtor's Chapter 12 case. *Fulton,* 80 B.R. at 1010. In general, Chapter 11 retainers are not flat fees for all services to be performed in a specific case. Instead, Chapter 11 retainers are usually held by an attorney as security for the payment of fees for professional services to be rendered when requested by a client.

In fact what emerges from the caselaw is that the word "retainer" is ambiguous when used in the context of a payment by a debtor to an attorney before the filing of a contemplated bankruptcy petition. In order to determine the status of the retainer after the petition is filed, it becomes necessary to determine the purpose of the retainer, i.e., was it meant by the parties to be payment in full for all contemplated services to be rendered, or was it meant to at least partially secure payment for an unknown amount of services to be rendered in the future? The best evidence would, of course, be a carefully drawn retainer agreement. However, none has been produced here. Therefore, the Court is left to ascertain the parties' intentions from the circumstances surrounding the payment.

 Retainers are traditionally meant to assure that the attorney will take the

case, be available to handle it and refuse employment by the client's adversary. *Blacks Law Dictionary* 1183 (5th Ed.1979). While these factors certainly apply to the retainer NM & S received in this case, they clearly were not the principal motivating cause behind the retainer. NM & S (now W & S) does not suggest that it took the $35,000 in full satisfaction of any services it might be called upon to render in the about-to-be-filed Chapter 11 case. If the Chapter 11 case had succeeded, experience suggests that NM & S would have incurred between $50,000 and $100,000 in fees or even more. This logic leads the court to conclude that the retainer here was very different from the payment-in-full type of retainer in *Fulton.* Clearly this retainer was meant to secure payment of the first $35,000 in fees earned by NM & S in this case and no more.[1]

 This Court believes that NM & S/W & S has acted in good faith throughout this case even though it did not file a fee application prior to the closing of this case. For example, even after the case was converted, NM & S and W & S continued to assist the trustee in administering the Chapter 7 case. The Court is loathe to discourage such cooperation which it would, in fact, want to encourage from other debtor's attorneys in other failed Chapter 11 cases. Also, in light of the fact

1. Even if NM & S's retainer was similar to the retainer in *Matter of Fulton,* this Court would be obligated to review a fee application to determine if the compensation was reasonable, and it would be the attorney's duty under Bankruptcy Rule 2016 to provide the court a detailed breakdown of the work performed. The court in *Fulton* required a detailed fee application pursuant to Bankruptcy Rule 2017 before allowing the debtor's attorney to keep the full $2,000 retainer. *Fulton,* 80 B.R. at 1011.

W & S argues that the retainer it received is not property of this estate because of the reference to § 329 of the Bankruptcy Code in § 541(a)(3) leads to the conclusion that a retainer does not become property of the estate unless and until recovered for the estate. Therefore, as NM & S sees it, it doesn't have to file a fee application to keep what already belongs to it. Instead the burden lies with the court or trustee to at least plead that the retainer is unreasonable under § 329 and Bankruptcy Rule 2017. Again the ambiguity surrounding the term retainer pre-

vents any blanket rule from being applied. Instead, the purpose underlying the retainer will control the result. If the retainer is of the payment type involved in *Fulton,* the professional acquires ownership of the retainer prepetition, and it is not property of the estate unless and until recovered under § 329 of the Code. That is the meaning of 11 U.S.C. § 541(a)(3). On the other hand, if the retainer is of the security type involved here, ownership of the retainer remains in the debtor even after the petition is filed just like any other situation involving the holder of a secured claim. *Cf.* 11 U.S.C. §§ 101(33), (45), 506(a). Thus, on the filing of the petition, the security retainer becomes property of the estate under § 542. *See generally Whiting Pools,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). In such a case, the right to keep the retainer ultimately turns on the filing and approval of a fee application under § 330 of the Code.

that this matter is one of first impression in this district, the Court will permit W & S to file its application for compensation and reimbursement even after the case is closed. However, this decision should not be regarded as precedent for future cases. In the future, the Court will require professionals to file fee applications before the case is closed where retainers have been obtained for security against future fees or risk forfeiture of the retainers.

In its fee application, W & S seeks allowance of compensation in the amount of $33,241.00 and reimbursement of expenses in the amount of $2,141.68. W & S also seeks to apply its $35,000 retainer in payment of its compensation and reimbursement. After reviewing the fee application, this Court finds that the compensation and expenses totaling $35,382.68 requested by W & S are reasonable.[2] For the reasons stated earlier, W & S will be allowed to apply its retainer of $35,000 to the compensation and reimbursement expenses it seeks. However, this Court will not award W & S any compensation or reimbursement of expenses over $35,000 because W & S failed to file a timely fee application pursuant to Bankruptcy Rule 2017.

IT IS HEREBY ORDERED that the law firm of Winston and Strawn be awarded the sum of $35,000 from its retainer for its representation of the debtor in this matter.

IT IS FURTHER ORDERED that $382.68 of additional compensation requested by Winston & Strawn be denied.

IT IS FURTHER ORDERED that this case is closed.

---

**2.** In reaching this conclusion, the Court has applied the standards set out in its previous *Chicago Lutheran* decision. *In re Chicago Lutheran,* 89 B.R. 719 (Bkrtcy.N.D.Ill.1988). In light of the conclusion reached, there is no reason to set out that analysis in detail. However, it is worth noting that the trustee in this case reached the same conclusion, i.e. that W &

S had earned the full $35,000 retainer, in his final report without benefit of time records or application. How the trustee could determine that there was no reason to challenge the $35,000 retainer paid to debtor's attorney without any information from that firm is unclear to the Court.