In re HOME EXPRESS, INC., Debtor.

HOME EXPRESS, INC., Plaintiff,

v.

ALAMO GROUP, LLC, Defendant.

Bankruptcy No. 96–41046 N.
Adversary No. 98–4722 AN.

United States Bankruptcy Court,
N.D. California,
Oakland Division.

Nov. 3, 1998.

658

Jeffrey Lederman, Maureen Harrison, Gray Cary Ware & Freidenrich, LLP, Palo Alto, CA, Special Counsel for Debtor-in-Possession and Plaintiff Home Express.

Scott Baker, Mike Buckley, Eric Wallis, Crosby, Heafey, Roach & May, San Francisco, CA, for Defendant Alamo Group.

## ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY ADVERSARY PROCEEDING

RANDALL J. NEWSOME, Bankruptcy Judge.

This Chapter 11 adversary proceeding is before the court pursuant to a motion to stay and to enforce the arbitration provisions of an agreement entered into between the plaintiff and the defendant. On or about September 27, 1997 this court entered an order permitting the debtor-in-possession to retain the defendant to act as a real estate consultant or broker in the disposition of certain leasehold interests. The agreement provided, among other things, that defendant would receive a success fee equal to a percentage of the sales in excess of $2.5 million. Additionally, the defendant guaranteed that it would generate at least $4.5 million from the sale of all leasehold interests. If one of the offers that defendant provided was not consummated for reasons beyond its control, the amount of that bid was subtracted from both the $2.5 million limit and the $4.5 million guaranty. The arbitration clause at issue provides that when the amount to be subtracted from the two limits cannot be agreed upon, the parties will submit to arbitration.

Although the application to approve defendant's appointment does not reference §§ 327 through 330, there is no question that it was brought pursuant and subject to those provisions. The application included a statement of disinterestedness as required by § 327, and the body of the application contains the form declarations regarding the applicant's qualifications to be appointed. This is not, then, as defendant adamantly asserts, a garden variety contract with the debtor. Nor does it purport to oust the court from jurisdiction to perform its duties under § 328 and § 330. Nonetheless, the defendant asserts that all of the causes of action of plaintiff's complaint are covered by, and subject to the binding, mandatory arbitration provisions in the agreement.

■ This court can hardly ignore the favored status and deference which the Supreme Court and the Ninth Circuit have given arbitration. *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Graham Oil Co. v. ARCO Products Co.*, 43 F.3d 1244 (9th Cir.1994). However, pursuant to *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), in order to determine whether an arbitration agreement should be enforced, this court must first determine whether the parties agreed to arbitrate the dispute at issue. It must then decide whether Congress intended to preclude a waiver of the judicial remedies for the rights at issue.

As to the first issue, the court finds that the arbitration clauses at hand are not nearly as sweeping in scope as the defendant suggests, or for that matter, as they could have been written. See, *In re Gurga*, 176 B.R. 196 (9th Cir. BAP 1994), where the arbitration clause covered "any disputes arising in any manner under this agreement." The first provision is under the success fee section of the contract. 4.3.6 of the agreement does not require arbitration of all disputes concerning the amount of the success fee. Rather it refers only to disputes over adjustments of the success fee "in the event that a lease is rejected . . . or otherwise becomes unavailable for transfer." The provision explicitly excludes any other disputes from its coverage. The other arbitration provision

appears in 5.10, which makes 4.3.6 applicable to disputes over adjustments to the guaranty "as described above." "Above" is ambiguous, but viewing the language in the light most favorable to the defendant, it would appear to cover any dispute over the amount of adjustment to the guaranty as described elsewhere in section 5. However, before questions regarding the amount of the adjustment are even considered, and thus before 5.10 comes into play, the defendant must present a "binding offer by a creditworthy transferee, which offer has been accepted by Debtor...." No reasonable construction of 5.10 would encompass questions concerning whether such an offer was made and accepted. If no such offers and acceptances occurred, then no adjustments to the 4.5 million would be required, and there could be no disputes over same.

A review of the debtor's complaint leaves open to serious question whether the arbitration clause has any applicability to the causes of action stated. I cannot tell at this juncture whether there is a dispute over the success fee that arises from the rejection of a lease or from its otherwise not being available, or from some other, nonarbitrable dispute. More significantly, there is a genuine issue of material fact as to whether Alamo ever presented the debtor with a binding offer by a creditworthy transferee, thus triggering the adjustment provisions of section five of the agreement. Therefore, it would be premature at best, to send this case to arbitration. At worst, granting defendant's motion would elevate the general deference to Title 9 over the real need to obtain a resolution of the parties' dispute in other than protracted, piecemeal fashion.

 Putting side the arbitrability of the disputes at hand, I find that disputes over fees in bankruptcy cases fall within the extremely narrow category of disputes which Congress probably never envisioned being delegated to nonjudicial entities for resolution. Under the Bankruptcy Act of 1898, the Supreme Court held that the jurisdiction of the bankruptcy court over fees is "paramount and exclusive," Congress having asked for "the informed judgment of the bankruptcy court, not another court or agency." *Brown*

*v. Gerdes,* 321 U.S. 178, 183–184, 64 S.Ct. 487, 88 L.Ed. 659 (1944). Nothing in the 1978 Code or amendments thereto indicates that Congress was unaware of this principle or that it intended to change it. As was stated in *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992), the 1978 Code should not be interpreted "to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history." No such legislative history supports the delegation of the court's fee-setting responsibilities to binding arbitration. Accordingly, although I might well be persuaded to adhere to the arbitration clause in an ordinary contract dispute between the debtor and another party (whether it be core or noncore), I find that bankruptcy policy must hold sway over the policies of the Federal Arbitration Act as to disputes involving § 327 through 330. Accordingly, the defendant's motion is hereby denied.

**IT IS SO ORDERED.**