In re DICK CEPEK, INC., Debtor.

Rus, Miliband & Smith,
APC, Appellant,

v.

Timothy J. Yoo, Chapter 7 Trustee;
Andela Consulting, Appellees.

BAP No. CC–05–1139–MoPaMa.

Bankruptcy No. LA 99–19373–EC.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted on Nov. 18, 2005
at Los Angeles, California.

Filed—March 21, 2006.

732

D. Edward Hays, Irvine, California, for appellant.

Timothy J. Yoo, Los Angeles, California for appellee.

Before: MONTALI, PAPPAS and MARLAR, Bankruptcy Judges.

## *OPINION*

MONTALI, Bankruptcy Judge.

Following conversion of a case from Chapter 11 to Chapter 7, the bankruptcy court ordered debtor's Chapter 11 counsel to disgorge a portion of its pre-petition retainer in order to equalize payments among all chapter 11 administrative claimants pursuant to section 726(b).[1] The Chapter 11 counsel appealed. We hold that a professional with a valid prepetition security retainer that has been properly documented, disclosed and approved by the bankruptcy court cannot be required to surrender it in the interest of equal

treatment under section 726(b). Because the bankruptcy court did not determine the validity of the "security" of the retainer at issue, we VACATE and REMAND.

## I.

### FACTS

Dick Cepek, Inc. ("Debtor") retained Rus, Miliband & Smith,[2] a Professional Corporation ("Appellant") as its general bankruptcy counsel to represent it in a Chapter 11 case. Prior to bankruptcy, Appellant received a retainer from Debtor in the amount of $84,955.85 (the "Retainer"). Debtor filed its Chapter 11 case on March 12, 1999.

Appellant disclosed its receipt of the Retainer to the court, creditors and the United States Trustee when it filed and served its notice of employment application in April 1999 and when it filed and served its employment application in June 1999. Neither of these documents, nor Appellant's Rule 2014 statement of disinterestedness or its Rule 2016(b) disclosure filed with the bankruptcy court, stated that Appellant held a security interest in the Retainer or considered itself a secured creditor as a result of the Retainer. At oral argument, counsel for Appellant confirmed that Appellant and Debtor did not execute a written agreement defining the terms of Appellant's representation of Debtor in the bankruptcy case.

The United States Trustee stated that it had no objection to the application. On July 6, 1999, the bankruptcy court[3] en-

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036, as enacted and promulgated prior to the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, Apr. 20, 2005, 119 Stat. 23.

2. Appellant was formerly known as Rus, Miliband, Williams & Smith, a Professional Corporation.

3. At the time Applicant's employment application was filed and granted, Bankruptcy Judge Lisa Hill Fenning presided over the case. The case was reassigned to Bankruptcy Judge Ellen Carroll on May 1, 2000.

tered an order approving the employment of Appellant as Debtor's general bankruptcy counsel. The order, stating that "it appearing that [Appellant] is a disinterested person," also specifically provided that Appellant could draw upon the Retainer in accordance with the "Office of the United States Trustee Guides." [4]

From March 1999 to July 1999, Appellant filed "Professional Fee Statements" for services it rendered during that time period. No objections were filed in response to the Fee Statements and Appellant withdrew the Retainer from its client trust account.

On November 24, 1999, Appellant filed its first interim fee application ("First Fee Application") requesting compensation in the amount of $100,904.50 and costs in the amount of $31,914.86. In paragraph D of the First Fee Application, Debtor noted that it had withdrawn the Retainer from its client trust account, but requested the court to authorize deduction of its allowed fees and costs "from the retainer funds on hand, to the extent such retainer funds are available or become available." In February 2000, before the First Fee Application could be heard, the court converted the case to Chapter 7. Appellee Timothy J. Yoo was appointed as Chapter 7 trustee ("Trustee").

In January 2003, Appellant filed its second and final fee application incorporating its First Fee Application and requesting the same amounts sought in the First Fee Application. Appellant has not received any funds other than the Retainer on account of services rendered in the bankruptcy case.

Trustee filed a final report indicating that the estate was administratively insolvent at the Chapter 11 level. The court held a hearing on Trustee's final report and all final fee applications on December 7, 2004. Even though no Chapter 11 professional or other party (including Trustee) argued that Appellant should disgorge its Retainer, the bankruptcy court *sua sponte* raised the issue of whether disgorgement of the Retainer was required under section 726(b) in order to equalize the percentage distribution to all Chapter 11 administrative claimants. The court granted Appellant additional time to brief the issue.

Appellant thereafter submitted a supplement arguing that the Retainer was a security retainer. In response, Trustee argued that if Appellant held a security interest in the Retainer, it was not "disinterested" as required by section 327(a) and potentially all fees would have to be disgorged. Debtor replied that it had fully disclosed the existence of the Retainer and that the court had approved its employment as a disinterested person.

On February 8, 2005, the bankruptcy court held a continued hearing on the final fee applications; although it approved the applications (with adjustments), it reserved the disgorgement issue for further hearing. The court noted that if the Retainer provided Appellant with a security interest in the funds retained, Appellant would not be "disinterested" as required for employment under section 327 and all fees would be subject to disgorgement. The court said: "I am not persuaded by the firm's pleadings that, you know, that it had a security interest in it's [sic][R]etainer . . . There's nothing in [Appellant's employment application] that says the firm is claiming a security interest in that [R]etainer."

---

**4.** The *Guide to Applications for Employment* adopted by the United States Trustee's Office in the Central District of California allows professionals to draw down on retainers before submitting a fee application if they have followed the procedure set forth therein.

On February 10, 2005, the bankruptcy court entered an order approving final compensation to Appellant in the amount of $85,246.00 in fees and $31,914.86 in costs. On February 18, 2005, the bankruptcy court held another hearing at which it ruled that Appellant would have to disgorge the Retainer. In so holding, the court relied extensively on *Specker Motor Sales Co. v. Eisen*, 393 F.3d 659 (6th Cir. 2004), which held that Chapter 11 counsel had to disgorge interim fees (including those paid by retainer) to guarantee pro rata distribution to all Chapter 11 administrative claimants.

The record is unclear whether, in ordering disgorgement, the court found that Appellant held a security interest in the Retainer. Appellant contends that the court did find that it held a security interest in the Retainer, while Trustee disagrees. At the February 18 hearing, the court repeated its concern that by claiming a security interest in the Retainer, Appellant was no longer a "disinterested" person for the purposes of section 327 and that all of its fees would be subject to disgorgement. Later in the hearing, however, the court dodged the issue of whether Appellant held a security interest in the Retainer which would have disqualified it as a "disinterested" professional, stating "I don't want to go there." The court also noted that the *Specker* decision supported disgorgement even if the fees were paid from a security retainer.

At the same hearing, the court made other statements which could be construed as a finding in favor of Appellant on this issue. For example, the court acknowledged Appellant's position that "it had a security interest in the retainer, which it in fact did appear to have ..." and described the Retainer "as is the case here what is known as a security retainer."

On March 31, 2005, the bankruptcy court entered its order requiring Appellant to disgorge to Trustee $54,236 of its Retainer (the "Disgorgement Order"). To add to the uncertainty whether the court found that Appellant had a security interest in the Retainer, the form of order submitted by Trustee referred to disgorgement of the "security retainer," but the court struck out the term "security." The court also entered an order granting a stay pending appeal of the Disgorgement Order. Appellant filed a timely notice of appeal on April 8, 2005.

## II.

## ISSUES

1. Did the bankruptcy court err in holding that retainers in which a professional holds a security interest are subject to disgorgement under section 726(b)?

2. If so, did Appellant hold a security interest in the Retainer?

## III.

## STANDARD OF REVIEW

■ This appeal presents primarily a question of law which we review *de novo*. *County of El Dorado v. Crouch (In re Crouch)*, 199 B.R. 690, 691 (9th Cir. BAP 1996).

## IV.

## JURISDICTION

■ Jurisdictional issues may be raised by us sua sponte. *See Vylene Enters., Inc. v. Naugles, Inc. (In re Vylene Enters., Inc.)*, 968 F.2d 887, 889 (9th Cir. 1992). In determining if it has jurisdiction, a federal court examines whether the parties have standing, the case or controversy is ripe, or the issue is moot. *Lee v. State of Oregon*, 107 F.3d 1382, 1387 (9th Cir.1997). "[J]usticiability requires that a

dispute be ripe and present an actual controversy." *Menk v. LaPaglia (In re Menk)*, 241 B.R. 896, 905 (9th Cir. BAP 1999). Here, in light of our reversing the bankruptcy court's legal conclusion while remanding for further factual findings, we must determine whether this appeal presents a justiciable issue under *American State Bank v. Marks (In re MacNeil)*, 907 F.2d 903 (9th Cir.1990).

In *MacNeil*, the Ninth Circuit held that a bankruptcy court and BAP erred in holding that Chapter 7 administrative expenses are entitled to priority over Chapter 11 superpriority claims before deciding whether the claimant held a Chapter 11 superpriority claim in the first place. The Ninth Circuit vacated the legal holding and remanded for the factual determination. In so doing, the panel concluded that the bankruptcy court and BAP had issued an "advisory opinion." *Id.* at 904. In reaching our conclusion today we have determined that we are not rendering an advisory opinion, that addressing the merits of the section 726(b) issue is appropriate, and that *MacNeil* no longer prohibits us from doing so.

The *MacNeil* majority held that the legal issue was not ripe for determination. As noted by the dissent in *MacNeil*, however, the majority confused "ordering of the issues" for resolution with ripeness and justiciability. The majority engaged in a "hyperbolic invocation[ ] of Article III limits to explain a common-sense refusal to decide issues that have not yet become germane in purely private litigation." 13A Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Richard D. Freer, *Federal Practice and Procedure* § 3532.1 (2005 Supp.) (not addressing *MacNeil* specifically, but discussing misapplication of the ripeness doctrine in general by courts). Both the bankruptcy court and BAP in *MacNeil* were faced with a live controversy between two litigants and they resolved that controversy as a matter of law without addressing factual issues that, given the holding, were irrelevant. Courts regularly resolve cases and controversies as a matter of law without addressing factual issues within the context of Rule 56 motions for summary judgment and Rule 12(b) motions to dismiss. Otherwise, deferring resolution of a dispositive legal issue just to hear and decide possibly irrelevant factual issues results in the same harm that the ripeness doctrine is designed to prevent: the court is futilely deciding unnecessary issues. It is answering questions that do not actually require answering.

█ More recent Supreme Court and Ninth Circuit decisions apply a more flexible standard of ripeness than did the *MacNeil* majority. Determining whether an issue is ripe for judicial review requires a court "to evaluate (1) the fitness of issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *National Park Hospitality Ass'n v. Department of Interior*, 538 U.S. 803, 808, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003); *United States v. Braren*, 338 F.3d 971, 975 (9th Cir.2003). Here, the bankruptcy court's holding that section 726(b) applies to Appellant's Retainer whether or not it was secured is fit for review. The court erred as a matter of law and its holding has been "felt in a concrete way" by Appellant. *National Park Hospitality*, 538 U.S. at 807, 123 S.Ct. 2026. Moreover, withholding review of the court's erroneous legal conclusion would result in a significant hardship and waste of resources of Appellant, Trustee, and the judicial system. If we simply remanded for a factual determination of whether the Retainer is secured, a significant likelihood exists that the legal error will be repeated and the parties will return to an appellate court

with the same issue. Refusing to decide the issue on the grounds of ripeness is inappropriate.

## V.

### DISCUSSION

This appeal presents an issue of first impression for the panel: can a bankruptcy court force a Chapter 11 administrative claimant to disgorge fees drawn from a prepetition retainer in which it holds a security interest in order to equalize the proportion of distributions to all Chapter 11 administrative claimants under section 726(b)? For the reasons set forth below, we believe that the bankruptcy court erred in concluding that it can.

A. *A Retainer is Not Subject to Disgorgement if the Claimant Holds a Security Interest in It*

Before representing a debtor in a Chapter 11 case, counsel often require a retainer. In general, three types of retainers exist: (1) classic or true retainers, (2) security retainers, and (3) advance payment retainers. *In re Montgomery Drilling Co.*, 121 B.R. 32, 37 (Bankr.E.D.Cal.1990), citing *In re McDonald Bros. Constr., Inc.*, 114 B.R. 989, 997–1002 (Bankr.N.D.Ill. 1990).[5]

A security retainer is generally held as security for payment of fees for future services to be rendered by the attorney. *Montgomery Drilling*, 121 B.R. at 38. The retainer remains property of the client (in this case, the estate) until the attorney applies it to charges for services actually rendered. Any unearned funds are returned to the client. *Id.; see also* 3 Collier on Bankruptcy ¶ 328.02[3][b][i] (15th ed.2005). Appellant claims that the Retainer here is a security retainer and that it held a secured interest in the funds in the Retainer. If that is true, section 726(b) would not apply.

Section 726(b) provides that payments specified in certain paragraphs of section 507 (including administrative claims) "*shall* be made pro rata" among claims of a kind specified in a particular paragraph, *except* that following conversion to Chapter 7, Chapter 7 administrative claimants shall have priority over other administrative claimants. *See* 11 U.S.C. § 726(b)(emphasis added).[6] To achieve pro rata distribution among a class of claimants, a court can order those claimants who have received payment during the course of a case to disgorge whatever amount is necessary to equalize the percentage of payments among all creditors in that class. *Shaia v. Durrette, Irvin, Lem-*

---

5. Classic retainers "refer to the payment of a sum of money to secure availability over a period of time." *Montgomery Drilling,* 121 B.R. at 37. The attorney is entitled to the retainer whether or not services are needed. *Id.* The advance payment retainer occurs when a client pre-pays for expected services; ownership of the funds in the retainer is intended to pass to the attorney at the time of payment, although California law is unclear whether ownership does indeed pass at that time. *Id.* at 38.

6. Section 726(b) provides:
 Payment on claims of a kind specified in paragraph (1), (2), (3), (4), (5), (6), (7), or (8) of section 507(a) of this title, or in

paragraph (2), (3), (4), or (5) of subsection (a) of this section, shall be made pro rata among claims of the kind specified in each such particular paragraph, except that in a case that has been converted to this chapter under section 1112, 1208, or 1307 of this title, a claim allowed under section 503(b) of this title incurred under this chapter after such conversion has priority over a claim allowed under section 503(b) of this title incurred under any other chapter of this title or under this chapter before such conversion and over any expenses of a custodian superseded under section 543 of this title.

ons & Bradshaw, P.C. (In re Metropolitan Elec. Supply Corp.), 185 B.R. 505, 509–10 (Bankr.E.D.Va.1995) (collecting cases at footnote 4).

Before a court applies section 726(b), property of the debtor must be administered and reduced to cash. To the extent a party has a valid lien on property that was used to produce the cash for the estate, that lien is paid first from the proceeds of the liquidation of that property. *United States v. Fed. Deposit Ins. Corp.*, 899 F.Supp. 50, 54 (D.R.I.1995) ("Federal bankruptcy law provides that if the property managed by the receiver [trustee] is sold to pay debts, the proceeds of the sale are used first to satisfy valid liens on the property, next for any exemptions the debtor may claim, and finally to pay claims enumerated in [section] 726."); *Waldschmidt v. Comm'r of I.R.S. (In re Lambdin)*, 33 B.R. 11, 13 (Bankr. M.D.Tenn.1983).

The remaining funds from the liquidation of that property are distributed to the debtor to the extent he or she has claimed an exemption in it.[7] *Lambdin*, 33 B.R. at 13. Only the excess remaining after satisfaction of the lien and the exemption is available to pay claims against the estate in accordance with section 726. *Id.; see also In re Am. Resources Management Corp.*, 51 B.R. 713, 719 (Bankr. D.Utah 1985) ("As a general rule, *expenses of administration must be satisfied from assets of the estate not subject to liens . . . .* Only surplus proceeds are available for

distribution to creditors of the estate and administrative claimants. Therefore, absent equity in the collateral, administrative claimants cannot look to encumbered property to provide a source of payment for their claims.") (emphasis added). Consequently, before section 726(b) is even implicated, all amounts secured by the lien created by the security retainer must be paid. Because these amounts must be paid before section 726 distributions commence, disgorgement solely on the basis of section 726(b) is impermissible.[8]

Applying similar reasoning, most of the courts addressing the issue of whether a security retainer must be disgorged in order to equalize distributions among Chapter 11 administrative claimants have held that the security retainer is protected from disgorgement. For example, in *In re Burnside Steel Foundary Co.*, 90 B.R. 942, 944 (Bankr.N.D.Ill.1988), the court held that a retainer is not subject to the provisions of section 726(b) because "[section] 726 only affects distribution priorities among holders of unsecured claims, and an attorney with a retainer is, to the extent of the retainer, the holder of a secured claim." *Burnside*, 90 B.R. at 944. Similarly, the court in *In re Zukoski*, 237 B.R. 194, 198 (Bankr.M.D.Fla.1998), held that if a case is converted to Chapter 7 from Chapter 11, a security interest in a retainer allows a Chapter 11 professional to "avoid the subordination provisions of [s]ection 726(b) to the extent that services

---

7. Inasmuch as Debtor is a corporation, it is not entitled to any exemption. 11 U.S.C. § 522(b) ("individual debtor" may claim exemptions).

8. Of course, the court may, in the exercise of its discretion, order disgorgement or turnover for other reasons, including (but not limited to) instances when a professional has not provided services commensurate with the retain-

er or has not properly disclosed the secured interest in the retainer. *Cf. Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park–Helena Corp.)*, 63 F.3d 877, 881–82 (9th Cir.1995) (holding that it was not an abuse of discretion for a bankruptcy court to deny all compensation to chapter 11 debtor's attorneys who failed to disclose relevant information about source of a retainer).

were provided and approved by the bankruptcy court." The court explained:

> The rationale for this result is simple. A prepetition retainer taken by a debtor's lawyer generally is intended to secure future payment of fees awarded by the court. The debtor's attorney becomes a secured creditor by taking possession of the prepetition retainer. Section 726(b), however, only affects the distribution priorities between unsecured claims because Section 507 only establishes priorities between unsecured creditors. As such, Section 726(b) has no application because the attorney holds a secured claim in the prepetition retainer to the extent the fees are allowed by the court.

*Id.* at 198 (internal citations omitted).

Other courts have held that a professional holding a security retainer "shall not be required to share [it] with other administrative claimants." *Weinman, Cohen & Niebrugge, P.C. v. Peters (In re Printcrafters, Inc.)*, 233 B.R. 113, 120 (D.Colo. 1999); *see also Commonwealth of Pa. v. Cunningham & Chernicoff, P.C. (In re Pannebaker Custom Cabinet Corp.)*, 198 B.R. 453, 460 (Bankr.M.D.Pa.1996) (prepetition security retainer was not subject to disgorgement simply to obtain parity among administrative claimants where funds were insufficient to pay administrative claimants in full, absent evidence of excessive or unreasonable nature of retainer); *In re North Bay Tractor, Inc.*, 191 B.R. 186, 188 (Bankr.N.D.Cal.1996) (rejecting argument "that since retainer is property of the estate, attorney must disgorge [it] so that other claimants of equal priority receive equal dividends" because "such a rule *would undermine the purpose of retainers and chill the willingness of many professionals to undertake representation of Chapter 11 debtors*") (emphasis added); *In re Printing Dimensions, Inc.*,

153 B.R. 715, 719 (Bankr.D.Md.1993) (counsel "will not be required to share a prepetition retainer pro rata with other administrative claimants, where either the retainer is treated as security or the retainer is held in trust").

In deciding to order disgorgement of Appellant's Retainer, the bankruptcy court relied on the Sixth Circuit's decision in *Specker Motor Sales*, 393 F.3d at 659, and on the published decisions of the bankruptcy court and the district court in the same case. *In re Specker Motor Sales Co.*, 289 B.R. 870 (Bankr.W.D.Mich.2003), *aff'd*, 300 B.R. 687 (W.D.Mich.2003). While the end result of the *Specker* decisions was that an attorney had to disgorge his retainer in order to achieve pro rata distribution to administrative claimants under section 726, the courts never considered the nature of the security interest held by the attorney in the retainer. We do not find any of the *Specker* cases to be persuasive because none of them squarely addressed and analyzed the issue presented here: whether a security retainer can be used in an effort to equalize distribution percentages under section 726(b).

Rather, all three cases focused entirely on a separate issue: whether disgorgement of amounts paid is discretionary or mandatory under section 726(b). Previously, the Bankruptcy Appellate Panel for the Sixth Circuit had held that bankruptcy courts have the discretion to order (or not) under section 726(b) disgorgement of fees allowed and paid on an interim basis. *See United States v. Schottenstein, Zox & Dunn (In re Unitcast, Inc.)*, 219 B.R. 741 (6th Cir. BAP 1998). The *Specker* court overruled *Unitcast*, holding that disgorgement was mandatory under section 726; otherwise, a "super-category" above the hierarchy of 507(a) would be created. *Specker*, 393 F.3d at 664.

The Sixth Circuit's only mention of retainers in its decision was that they are subject to re-examination and adjustment as they "are held in trust for the estate, and remain property of the estate." [9] *Id.* at 663. Neither the Sixth Circuit (nor the district court nor the bankruptcy court) considered the issue of whether the professional held a security interest in the retainer funds thereby protecting the retainer from section 726(b) disgorgement. For this reason, we will not follow *Specker* but will follow the line of cases cited above that do address this issue squarely. We hold that prepetition security retainers are not subject to disgorgement simply to achieve equal distribution among similar creditors under section 726(b).

**B. *Did Appellant Hold a Security Interest in the Retainer?***

Having concluded that valid security retainers are not subject to section 726(b) disgorgement, we now face the issue of whether Appellant held such a security retainer. As noted, it appears from the record that the bankruptcy court did not resolve this issue, having concluded that *Specker* applied whether or not the Retainer was a security retainer.

Appellant argues that as a matter of law, it is a secured creditor in the amount of the Retainer by virtue of Appellant's possession and retention of the Retainer funds. There is ample law to support Appellant's position. As noted by *Collier on Bankruptcy:*

> With respect to "secured" retainers, courts generally hold that a professional with such a prepetition retainer is a "secured creditor" and has a security interest in the retainer, noting that the professionals receiving prepetition retainers to insure payments of fees to be earned in the chapter 11 case (or postpetition retainers authorized by the court) *become secured creditors by virtue of a possessory interest in cash. The professional's status as a secured creditor by virtue of the retainer does not disqualify the professional from being retained by the estate as required by section 327 of the Code.*

3 *Collier on Bankruptcy* ¶ 328.02[4] (emphasis added and internal footnotes omitted), citing *In re K & R Mining, Inc.,* 105 B.R. 394, 397–98 (Bankr.N.D.Ohio) (attorney "possesses a security interest in the retainer to secure payment of its attorney's fees and expenses;" attorney is not disqualified as "not disinterested" merely because it holds a security interest in the retainer funds) [10]; *Burnside,* 90 B.R. at

---

**9.** In *In re U.S. Flow Corp.,* 332 B.R. 792, 795 n. 7 (Bankr.W.D.Mich.2005), the court noted another possible distinction between *Specker* and the case here. In *Specker,* the Sixth Circuit stated that after the petition date, the bankruptcy court authorized the employment of counsel "[a]t that time" the attorney received his retainer. In other words, the Sixth Circuit indicates that the retainer was postpetition, not prepetition (although, as the *US Flow* court notes, the record shows that the retainer was paid prepetition). To the extent the Sixth Circuit's decision is based on an assumption that the retainer was postpetition, however, it is further distinguishable from this case and all of the cases holding that prepetition security retainers are not subject to section 726(b) disgorgement.

**10.** Even though section 328 specifically allows an estate professional to be employed on a retainer, the bankruptcy court here expressed concern that retention of a security retainer would render Appellant "not disinterested" under section 327, thus disqualifying it. We disagree for two reasons. First, the court already found that Appellant appeared to be disinterested. Second, holding a security retainer does not *per se* disqualify Appellant. A "creditor" is not "disinterested." *See* 11 U.S.C. § 101(14). But retention of a security interest to secure payment of fees not yet incurred does not render a professional a

944 (attorney "who receives a prepetition retainer to insure payment of fees to be earned in the Chapter 11 case ... becomes a secured creditor, secured by a possessory security interest in cash").

California law is consistent with *Collier* and this case law. In *In re GOCO Realty Fund I*, 151 B.R. 241, 252 (Bankr.N.D.Cal. 1993), the court held that a security retainer is property of the estate, but that a professional holding such a retainer "has a validly perfected security interest in the funds in his possession." The attorney "perfects a security interest in money by taking possession of the funds" as permitted by the Uniform Commercial Code. *Id.* at 251.

■ We agree with *Printcrafters* and the other case law cited above that a professional holding a security interest in a prepetition retainer cannot be forced to share that retainer with other administrative claimants solely to achieve pro rata distribution under section 726(b). We also agree with *Collier* and *K & R Mining* that retention of a security retainer by an estate professional does not *per se* disqualify the professional as not "disinterested" under section 327, but we recognize that the inquiry into whether the professional holds interests adverse to the estate, is disinterested or otherwise is impaired by conflict of interest (actual or potential) is necessarily case- and fact-specific.

There must be at a minimum full and timely disclosure of the details of any given arrangement. Armed with knowledge of all of the relevant facts, the bankruptcy court must determine, case by case, whether the security interest coveted by counsel can be tolerated under the particular circumstances. In so doing, the court should consider the full panoply of events and elements: the reasonableness of the arrangement and whether it was negotiated in good faith, whether the security demanded was commensurate with the predictable magnitude and value of the foreseeable services, whether it was a needed means of ensuring the engagement of competent counsel, and whether or not there are telltale signs of overreaching. The nature and extent of the conflict must be assayed, along with the likelihood that a potential conflict might turn into an actual one. An effort should be made to measure the influence the putative conflict may have in subsequent decision-making. Perceptions are important; how the matter likely appears to credi-

"creditor." All professionals become "creditors" when they perform services for which the estate must pay. When the services are performed, the professional is not thereupon disqualified as not disinterested. The fact that the professional holds a security retainer is irrelevant in determining whether it is a creditor. As noted by the First Circuit:

> At first blush, [section 327] would seem to foreclose the employment of an attorney who is in any respect a "creditor." But, such a literalistic reading defies common sense and must be discarded as grossly overbroad. After all, any attorney who may be retained or appointed to render professional services to a debtor in possession becomes a creditor of the estate just as soon as any compensable time is spent on ac-

count. Thus, to interpret the law in such an inelastic way would virtually eliminate any possibility of legal assistance for a debtor in possession, except under a cash-and-carry arrangement or on a pro bono basis. It stands to reason that the statutory mosaic must, at the least, be read to exclude as a "creditor" a lawyer, not previously owed back fees or other indebtedness, who is authorized by the court to represent a debtor in connection with reorganization proceedings—notwithstanding that the lawyer will almost instantaneously become a creditor of the estate with regard to the charges endemic to current and future representation.

*In re Martin*, 817 F.2d 175, 180 (1st Cir.1987) (footnote omitted).

tors and to other parties in legitimate interest should be taken into account. There are other salient factors as well: whether the existence of the security interest threatens to hinder or to delay the effectuation of a plan, whether it is (or could be perceived as) an impediment to reorganization, and whether the fundamental fairness of the proceedings might be unduly jeopardized (either by the actuality of the arrangement or by the reasonable public perception of it).

*Martin*, 817 F.2d at 182.

 Prudence, ethical considerations and general proof requirements all suggest that an arrangement whereby a professional is granted a security interest in a debtor's funds be adequately documented. The Bankruptcy Code and Rules require full disclosure of all interests held by a professional who seeks employment on behalf of the estate. If a professional holds a secured interest in assets of the estate, that security interest must be disclosed. Here, the bankruptcy court must decide if Appellant made an adequate disclosure of its secured interest in the Retainer. It must further decide whether there is adequate evidence in the record to show under state law that Debtor granted Appellant an enforceable security interest in the funds. The bankruptcy court is in a better position to make these and any other necessary factual findings. We therefore REMAND for a determination of whether Appellant holds a valid security retainer; if so, the Retainer is not subject to disgorgement under section 726(b).

## VI.

### CONCLUSION

For the foregoing reasons, we hold that security retainers are not subject to disgorgement under section 726(b) of the Bankruptcy Code. We therefore VACATE and REMAND for a determination of whether Appellant holds such a security retainer.

PAPPAS, Bankruptcy Judge, concurring.

I concur with the analysis and reasoning in the Panel's opinion. I write separately to acknowledge the genuine concerns expressed in the dissent about the potential for problems and policy implications of allowing chapter 11 debtors to grant their attorneys a secured interest in their cash assets as a condition of employment in bankruptcy cases. To be sure, I am no fan of secured professional employment arrangements, having shunned them on occasion when proposed. As a general rule, it may be profoundly unwise for a bankruptcy court to allow an attorney the leverage inherent in a security interest in funds given by the chapter 11 debtor as a retainer. When that is the case, the bankruptcy judge may and should reject such an arrangement.

But that said, I see no *per se* prohibition on such agreements under the Bankruptcy Code, and I do not believe we in the majority "turn our backs on a clear Congressional statutory mandate ...." To the contrary, Congress' supposed condemnation of secured retainers is far from "clear." Instead, Congress has instructed that a bankruptcy court may authorize a chapter 11 debtor to retain counsel "on *any reasonable terms and conditions* of employment, *including a retainer* ...." 11 U.S.C. § 328(a) (emphasis added). But this provision confers no unfettered authority on the debtor and its lawyer. All significant terms of a professional's employment by a chapter 11 debtor, whether they include security or not, are subject to full disclosure and prior court approval after evaluation by the presiding bankruptcy judge. 11 U.S.C. § 327(a); Fed. R.

Bankr.P.2014(a). Even if the arrangement is approved, all fees secured by the attorney's lien must be reasonable in amount, and are subject to further review and approval by the court. 11 U.S.C. § 330(a)(1)(A). Finally, "if such [employment terms] prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions ...," the arrangement can be scrapped by the bankruptcy court. 11 U.S.C. § 328(a).

I agree with the dissent that a professional's decision to require a secured retainer may lead it to encounter difficult ethical decisions, and potentially may develop into "an interest materially adverse to the interest of the estate" such that the professional risks disqualification, and even loss of compensation, later in the case. 11 U.S.C. § 101(14)(E). But whether the potential costs associated with future adverse interests outweighs the possible benefits from such an employment relationship is, in the first instance, for the attorney and chapter 11 debtor to decide. If a secured retainer seems a reasonable and necessary step to counsel and client, the proposal must yet pass muster before the bankruptcy court. But if a secured retainer arrangement clears all these hurdles, I think Congress intended that the professional's status be respected as against the claims of unsecured claimants.

MARLAR, Bankruptcy Judge, dissenting.

I must respectfully dissent.

The majority's *premise* is that an insolvent chapter 11 debtor's counsel's security retainer is tenable under the Code in the first place. It is with this fundamental view that I disagree.

Congress did not intend for chapter 11 professionals (especially the debtor's counsel) to favor themselves over other professionals by obtaining employment as a "secured" creditor and thereby bootstrapping an alleged superpriority for themselves.

One of the Code's fundamental concepts is "equitable distribution." "Bankruptcy law accomplishes equitable distribution through a distinctive form of collective proceeding. This is a unique contribution of the Bankruptcy Code that makes bankruptcy different from a collection of actions by individual creditors." *Sherwood Partners, Inc. v. Lycos, Inc.*, 394 F.3d 1198, 1203 (9th Cir.2005), *cert. denied,* —— U.S. ——, 126 S.Ct. 397, 163 L.Ed.2d 275 (2005).

Notwithstanding this well-settled principle, the opinion in this case elevates normal state law concepts for obtaining a "secured" retainer above the bankruptcy scheme. In so doing, the majority alters the long-established statutory and case-law authority which, for generations, has adhered to the fundamental precepts of bankruptcy's equality principles.

For an attorney seeking fees, the principle of equitable distribution begins with Section 327 compliance. The Supreme Court has stated that "[t]he plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *United States v. Ron Pair Enters.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (alteration in original) (citation omitted).

Section 327(a) provides that a debtor in possession, "with the court's approval, may employ one or more attorneys ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons ...." 11 U.S.C. § 327(a). *See Movitz v. Baker (In re Triple Star Welding, Inc.),* 324 B.R. 778, 790 (9th Cir. BAP

2005) (valid employment under § 327(a) is a prerequisite to compensation). A " 'disinterested person' means [a] person that— (A) *is not a creditor,* an equity security holder, or an insider; . . . and . . . (E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor . . . *or for any other reason*[.]" 11 U.S.C. § 101(14) (emphasis added).

A "creditor" is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor[.]" 11 U.S.C. § 101(10).

Clearly, under Section 327(a), an attorney who receives a prepetition security retainer, and who becomes a "secured creditor" pursuant to state law, is not "disinterested" under the Code's plain terms. *See In re Lackawanna Med. Group, P.C.,* 323 B.R. 626, 630 (Bankr.M.D.Pa.2004).

If, as here, a bankruptcy court has determined such an attorney to be disinterested initially, it may revisit the issue, for the Section 327(a) requirements apply not only at the time of retention but also throughout the case. *See Sec. Pac. Bank Wash. v. Steinberg (In re Westwood Shake & Shingle, Inc.),* 971 F.2d 387, 391 (9th Cir.1992) (Section 327 orders are preliminary and not conclusive due to the bankruptcy judge's continuing supervision); *In re Plaza Hotel Corp.,* 111 B.R. 882, 891 (Bankr.E.D.Cal.1990), *aff'd mem.,* 123 B.R. 466 (9th Cir. BAP 1990) (bankruptcy court may revisit issues such as conflicts whenever appropriate). *See also* § 328(c) (court may deny compensation "if, at any time during such professional person's employment under section 327 . . . such professional person is not a disinterested person . . . .").

Thus, even assuming, *arguendo,* that the disinterestedness component is not implicated *per se* upon an attorney's retention of a prepetition security retainer, it definitely arises when a case is converted from chapter 11 to chapter 7. Section 726(b) provides that the chapter 7 administrative expenses have a priority of payment over the chapter 11 administrative expenses. If the chapter 7 estate cannot pay all chapter 11 administrative expenses in full, they are then paid *pro rata.* It is illogical to pretend that a professional who enjoys a preferred security interest in the retainer received—above all other professionals in the chapter 11 or any chapter 7 case which follows—is "disinterested."

In addition to the disinterestedness requirement, the Code attempts to treat claimants of the same class equally. Chapter 11 debtors' attorneys must apply for and obtain approval of their fees under Section 330, notwithstanding the existence of a retainer agreement or attorney's lien. *See DeRonde v. Shirley (In re Shirley),* 134 B.R. 940, 943 (9th Cir. BAP 1992) ("Court approval of the employment of counsel for a debtor in possession is *sine qua non* to counsel getting paid."); *Lamie v. United States Trustee,* 540 U.S. 526, 537–39, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (chapter 7 debtor's attorney must be employed under § 327 in order to be compensated from the estate under § 330); *Shapiro Buchman LLP v. Gore Bros. (In re Monument Auto Detail, Inc.),* 226 B.R. 219, 224 (9th Cir. BAP 1998); 3 *Collier on Bankruptcy* ¶ 330.02[1][c], at 330-9 (15th ed. rev.2005) ("Absent compliance with the Code or Bankruptcy Rules, there is no right to compensation.").

When their fees are approved, attorneys thereby become administrative claimants. *See* § 503(b)(2). Thus, although a "retainer" may be authorized under § 328(a), a "security retainer," which elevates the at-

torney to the level of a "secured creditor," is inconsistent with § 330.[11] Furthermore, Section 330 does not expressly grant an attorney holding a security retainer a superpriority, and therefore such attorney is on a par with all other chapter 11 administrative claimants.

Which brings us once again to Section 726, the Code's distribution priority scheme. This statute provides superpriority status only for the so-called "burial expenses" incurred in the administration of the superseding chapter 7 case in order to encourage trustees and other professionals to participate in the liquidation and maximize the benefit for creditors of the estate. *In re Hers Cosmetics Corp.*, 114 B.R. 240, 246 (Bankr.C.D.Cal.1990); § 726(b). It cannot be reconciled that the Code's priority scheme is meant to do more than it does. In a case converted from chapter 11 to chapter 7, that scheme (§ 726(b)) gives first priority to chapter 7 administrative expenses, then to chapter 11 administrative expenses, and then to the other creditors. Each group shares *pro rata* unless there is enough cash to pay each group in full. Nowhere does the Code imply that a chapter 11 debtor's counsel may receive a different and preferred treatment.

This equality-of-treatment philosophy has prevailed even where creditors have actually held superpriority administrative claims but have been subordinated to the Section 726(b) scheme. *See Temecula v. LPM Corp. (In re LPM Corp.)*, 300 F.3d 1134, 1138 (9th Cir.2002) ("Although Congress gave post-chapter 11 rent adminis-trative priority in chapter 11 proceedings, it did not authorize super-priority over other administrative expenses in the event the case is converted to a chapter 7. To the contrary, Section 726(b) gives Chapter 7 administrative claims priority over Chapter 11 administrative claims."); *Citibank, N.A. v. Transam. Commercial Fin. Corp. (In re Sun Runner Marine, Inc.)*, 134 B.R. 4, 6 (9th Cir.BAP1991) (a superpriority claim granted for lack of adequate protection was necessarily an administrative expense claim, and did not take priority over chapter 7 administrative expenses, pursuant to § 726(b)).

I have no quarrel with California's concept of security retainers within the boundaries of California law and the usual two-party dispute regimen. But state law must take a back seat to federal law. The Supreme Court has held that the bankruptcy court's jurisdiction over fees is "paramount and exclusive." *Brown v. Gerdes*, 321 U.S. 178, 183–84, 64 S.Ct. 487, 88 L.Ed. 659 (1944) (Bankruptcy Act), and this policy remains intact.

Therefore, a state statute which purports to disrupt bankruptcy law's major goal of equitable distribution is plainly preempted by federal law. *Sherwood Partners*, 394 F.3d at 1203–05 (California law appointing a general assignee to recover a preferential transfer was preempted by Code). *Cf. Shearson Lehman Mortgage Corp. v. Laguna (In re Laguna)*, 114 B.R. 214, 216 (9th Cir. BAP 1990) (holding that ruling contrary to state law also impedes the bankruptcy goal of equitable

---

**11.** Several courts have opined that § 330 trumps nonbankruptcy law in other contexts. For example, in *Monument Auto Detail*, we held that "the Code and Rules preclude fee awards for services performed on behalf of a bankruptcy estate based on state law theories not provided for by the Code, such as *quantum meruit*." *Monument Auto Detail*, 226

B.R. at 224. Another court has held that "bankruptcy policy must hold sway over the policies of the Federal Arbitration Act as to disputes involving § 327 through § 330." *Home Express, Inc. v. Alamo Group, LLC (In re Home Express, Inc.)*, 226 B.R. 657, 659 (Bankr.N.D.Cal.1998).

distribution among creditors unless there is a "clear statutory mandate" for such ruling).

The policy underlying the bankruptcy distribution scheme in a converted chapter 7 case is crystal clear: "Those who must wind up the affairs of a debtor's estate must be assured of payment, or else they will not participate in the liquidation or distribution of the estate." H.R.Rep. No. 95–595, at 186–87 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6147.

The flaw in the majority's opinion, in my view, is that a cash retainer for chapter 11 services, by merely calling it a "secured" retainer under California law, and complying with the requirements to create the security interest, can thereby immunize it from disgorgement attack if the reorganization fails and the case converts to chapter 7. The parties, who then potentially suffer, are the very parties to whom Congress granted the first priority on available cash—the chapter 7 professionals—while the chapter 11 debtor's counsel, who voluntarily took the case when it came in the door, and who had to pass the "disinterestedness" test in order to be counsel in the first place, gathers up all the acorns because he or she was clever enough to call the retainer "secured."

The majority fears that invalidating security retainers will "chill" representation for chapter 11 debtors. This theory has a flip side. If we now change the rule to prefer chapter 11 professionals over chapter 7 professionals, it would seem that the chapter 7 professionals will lose *their* incentive to administer what is left of the estate. In other words, the "chill" now transfers to the chapter 7 professionals.

I therefore disagree with my bankruptcy judge colleagues who also believe that anything less than a "secured" retainer will "chill" many professionals from representing chapter 11 debtors. In my professional judgment and experience, such fear is unfounded. Chapter 11 debtors have enjoyed a vast stable of qualified professionals—without "secured" retainers, I might add—since the memory of man runneth not to the contrary. On the other hand, allowance of secured creditor status or superpriority for chapter 11 attorneys will definitely "chill" efforts in any later chapter 7 liquidation.

Like it or not, *every* bankruptcy professional, because of these long-settled, equality of distribution principles, takes a case with the understanding that full payment of any fee is always dependent upon a debtor's or trustee's financial successes and/or available resources. Chapter 11 debtors' counsel are risk takers, just the same as other administrative creditors, whose awareness of possible disgorgement in the event of conversion merely encourages them to attain a fruitful reorganization. *See Specker Motor Sales Co. v. Eisen,* 393 F.3d 659, 664 (6th Cir.2004).[12]

---

**12.** The majority states that *Specker,* on which the bankruptcy court relied, did not discuss whether the attorney's prepetition retainer was a security retainer which protected it from disgorgement under § 726(b). They are correct, but miss the larger picture.

In *Specker,* the attorney's $10,000 retainer was not categorized, however the Sixth Circuit applied the general rule that retainers are considered to be property of the estate and subject to disgorgement. *Specker,* 393 F.3d at 663. It is generally recognized that only "se-curity retainers" and "advance retainers" are property of the estate, whereas "classic retainers" are not. *See S.E.C. v. Interlink Data Network of Los Angeles, Inc.,* 77 F.3d 1201, 1205 (9th Cir.1996); *see generally,* C.R. Bowles Jr., "Your Retainer: Pocket Aces or a 7–2 Off Suit?" 24–May Am. Bankr. Inst. J. 28 (2005).

The facts in *Specker* were that, after conversion and completed liquidation, only five chapter 11 administrative claims remained. *Specker Motor Sales Co. v. Eisen,* 300 B.R.

I believe the opinion breaks new ground in the employment of bankruptcy professionals, and leads down a path that I, for one, am unwilling to tread. If we endorse the concept espoused by the majority, we will no doubt enjoy immense popularity among bankruptcy professionals—especially chapter 11 debtors' counsel (the only ones fortunate enough to be able to grab a "secured" retainer before placing the debtor into chapter 11 in the first place). In so doing, however, we do a grave injustice to other bankruptcy professionals who are not so fortunate as to dictate their terms of repayment, including over whom they have priority once the case goes south.

We also turn our backs on a clear Congressional statutory mandate, lead bankruptcy law in the wrong direction, and enable nonbankruptcy state law concepts to obtain unwarranted supremacy over federal law.

I therefore respectfully DISSENT.

687, 688 (W.D.Mich.2003), *aff'd*, 393 F.3d 659 (6th Cir.2004). Even though the attorney had a retainer, the Sixth Circuit held that § 726(b) mandated *pro rata* distribution among the administrative claimants. In order to accomplish that, the attorney was ordered to disgorge his interim fees, and the Sixth Circuit affirmed the disgorgement order. *Specker*, 393 F.3d at 661.

Clearly, the import of this opinion was that § 726(b) trumps an attorney's interest in a retainer that is property of the estate. *See In re Raynard*, 327 B.R. 623, 631 (Bankr. W.D.Mich.2005) (citing *Specker* for the proposition that "attorneys who represent Chapter 11 debtors must disgorge interim compensation received in order to equalize distribution among Chapter 11 administrative claimants.")