UNITED STATES of America,
Plaintiff–Appellee,

v.

Boyd P. BRAREN; Boyd P. Braren Trust; Marilyn J. Mosby; John M. Mosby; Leslie Hufford; Kenneth J. Hufford; Hart Estate Investment Company; Peggy Marenco, Defendants–Appellants,

and

State of Oregon, Defendant–Intervenor,

v.

Klamath Indian Tribes, Plaintiff–Intervenor–Appellee.

United States of America,
Plaintiff–Appellee,

v.

Boyd P. Braren; Boyd P. Braren Trust; Marilyn J. Mosby; John M. Mosby; Leslie Hufford; Kenneth J. Hufford; Hart Estate Investment Company; Peggy Marenco, Defendants,

and

State of Oregon, Defendant–Intervenor–Appellant,

v.

Klamath Indian Tribes, Plaintiff–Intervenor–Appellee.

Nos. 02–35441, 02–35446.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 8, 2003.

Filed July 21, 2003.

See also 478 F.Supp. 336, 723 F.2d 1394.

972

William F. Schroeder and Carol DeHaven Skerjanec, Vale, OR, and Jerome C. Muys, Washington, DC, for appellants Brarens.

Stephanie L. Striffler, Special Counsel to the Oregon Attorney General, Salem, OR, for appellant Oregon.

Andrew C. Mergen, United States Department of Justice, Washington, DC, for appellee United States.

Walter R. Echo Hawk, Native American Rights Fund, Boulder, CO, for appellees Klamath Tribes.

Before LAY,* WALLACE, and TALLMAN, Circuit Judges.

## OPINION

TALLMAN, Circuit Judge.

The State of Oregon, the United States, the Klamath Tribes, and many individual landowners have spent the past twenty-five years trying to determine rights to water in Oregon's Klamath Basin. The federal courts were the first forum for this effort, determining the scope of the federal water rights in 1979. We affirmed the legal rights at issue and approved leaving the quantification of water amounts to state proceedings. For the past decade or so, Oregon has proceeded with a massive and comprehensive administrative adjudication (Adjudication) of the competing claims to water in the Klamath Basin.

Now, the United States and the Klamath Tribes have returned to federal court asking the district court to clarify the scope of the federal water rights involved and to assess the propriety of the water rights standard recently announced in a preliminary administrative assessment issued in the Oregon Adjudication. Because the federal dispute presented here is not ripe for our determination, we dismiss the appeal and remand this case to the district court for it to enter an order vacating its judgment and staying federal proceedings

* The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

until the completion of the Oregon Adjudication (including any appellate review).

## I

### A

In the late 1970s, the district court determined the nature and scope of water rights granted by treaty to the Klamath Tribes. *United States v. Adair*, 478 F.Supp. 336 (D.Or.1979) (*Adair I* ). After announcing the standard for prioritizing how the water is applied to fulfill these rights, the district court left to Oregon the task of adjudicating the amounts of water to be allocated to each of the many claimants in the Klamath Basin (including the United States and the Klamath Tribes). The district court expressly retained jurisdiction over the case if necessary to effectuate its judgment. We approved the district court's assessment of the Indian water rights—with one caveat—and also embraced the district court's division of jurisdiction for resolving the dispute (federal courts announce the standard; Oregon applies and quantifies it). *United States v. Adair*, 723 F.2d 1394 (9th Cir.1983) (*Adair II* ).

Oregon commenced a comprehensive water rights adjudication process to resolve the competing claims. In 1990, the Oregon Water Resources Department (Water Department) issued to all interested parties a "Notice to File Claim." This document informed putative claimants that they had to file their asserted water claims before the Water Department. By 1996, the United States had filed 395 claims, including claims by the Bureau of Indian Affairs on behalf of the Klamath Tribes. The Tribes submitted five claims of their own, incorporating by reference all claims filed by the Bureau of Indian Affairs. We are informed that more than 5,000 claims in all were received and require processing.

In 1998 and 1999, the Water Department requested legal and scientific justification supporting the claims filed by the United States and Tribes. The United States provided a response for itself and the Tribes. The Water Department solicited legal advice from the Oregon Department of Justice (ODOJ). The ODOJ provided the Water Department with a letter concluding that the Tribes "are entitled to the minimum amount of water necessary to support the Tribes['] fishing and hunting rights as they were exercised contemporaneously with the *Adair* decision."

On October 4, 1999, shortly after receiving the ODOJ's advice letter, the Water Department's Adjudicator issued a "Summary and Preliminary Evaluation" of water rights claimed in the Adjudication. For the claims asserted by the Bureau of Indian Affairs, the Adjudicator announced the following standard:

> Claims for instream flow to fulfill the purposes of the Klamath Tribes' treaty rights for hunting and fishing are proper if the record shows that the claimed amount is the minimum quantity of water necessary to protect treaty fish and wildlife resources as they existed in 1979. . . .

The Preliminary Evaluation also stated that "[c]laims for [water to support] gathering rights are improper."

After a period of open inspection, "contests" were filed. The United States filed 480 contests; the Klamath Tribes filed 242. Individuals filed 134 contests against the claims made by the Bureau of Indian Affairs; 36 contests were filed against the Tribes' claims. The parties contesting the United States and tribal claims adopted the interpretation of *Adair II* set forth in the Water Department's Preliminary Evaluation.

Although the Adjudication has made much progress, it is far from complete. As of May 2001, 5,654 contests had been filed. Proceedings have been initiated in 2,267 of these contests, consolidated into five cases. Proceedings have not been initiated on the contests regarding the claims made by the Tribes and Bureau of Indian Affairs.

These contests will be heard before an administrative panel. Or. Admin. R. 137-003-0515. Parties in these hearings will be allowed to engage in discovery, file motions, subpoena witnesses, introduce documentary evidence, and provide testimony. Or. Admin. R. 137-003-0501 through 0700. The hearing panel will then issue proposed orders.

Next, the Water Department will review the proposed orders and the record as a whole and ultimately issue its "Findings of Fact and Order of Determination," which will resolve all of the water rights claimed in the entire Adjudication. Or.Rev.Stat. § 539.130. This Determination will be lodged with a state circuit court. *Id.* Parties may then file exceptions to the Determination, after which the court will file a judgment that may be appealed to the Oregon appellate courts. Or.Rev.Stat. § 539.150. After the Oregon appellate remedies are exhausted, the parties may seek review by the United States Supreme Court on petition for certiorari.

## B

The appeal now before us originated in 2001 when the United States and the Tribes returned to the district court seeking a declaratory judgment. Both the United States and the Tribes sought a declaration that the Tribes have a water right to support the gathering of plants. They also asked the district court to construe and clarify the nature and scope of tribal water rights announced by it in *Adair I* and by us in *Adair II.*

Oregon argued that the dispute was not yet ripe. Oregon also opposed the district court's exercise of jurisdiction; Oregon based its opposition on the theory of abstention announced in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). The district court rejected Oregon's arguments and opted to exercise its jurisdiction.

The district court proceeded to decide the merits of the declaratory judgment sought by the Tribes and the United States. 187 F.Supp.2d at 1275. The court announced a two-step method of establishing tribal water rights. *Id.* at 1276–77. The district court also held that the individual defendants were precluded from arguing that the Tribes had lost their treaty rights to hunt, fish, and gather because this issue was conclusively resolved in *Adair I* and *II. Id.* at 1279.

## II

Oregon and several individuals (collectively, the Brarens) appeal. Oregon renews its position that the dispute is not ripe and the district court should have abstained from exercising its jurisdiction. The Brarens alone appeal the district court's declaratory judgment clarifying the *Adair* standard. Whether a matter is ripe for judicial determination is a legal question that we review *de novo. Dodd v. Hood River County,* 59 F.3d 852, 857 (9th Cir. 1995).

Oregon contends that neither the Preliminary Evaluation of the Water Department nor the contests pending in the Adjudication make this case ripe. Oregon argues that the Preliminary Evaluation, while "an important tool in the adjudication," does not set a permanent standard for how to measure the Tribes' water

rights. Instead, the parties remain free to argue in the hearings on their contests that their rights are something other than what was established in the Preliminary Evaluation. The results of these contests will then be evaluated by the Water Department, which will issue final administrative findings. These findings will then be subject to appeal in the Oregon courts. Oregon maintains that further factual development is needed because the Adjudication has not yet reached a final decision, so the Adjudication's ultimate interpretation and application of the *Adair* standard is not yet known. We are persuaded by Oregon's argument.

■ There are two components to ripeness: constitutional ripeness and prudential ripeness. *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir.2000) (en banc). The constitutional ripeness of a declaratory judgment action depends upon "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941); *accord Central Montana Electric Power Co-op., Inc. v. Bonneville Power Administration*, 840 F.2d 1472, 1474 (9th Cir.1988).

■ There is little doubt that the constitutional ripeness test is met here. Oregon does not overtly argue otherwise. The Water Department adopted a standard that allegedly conflicts with the Tribes' federal water rights as announced in *Adair I* and *Adair II*. This position indicates a "substantial controversy" between the parties that is immediate.

■ The prudential component of ripeness requires more thorough consider-

ation. "In evaluating the prudential aspects of ripeness, our analysis is guided by two overarching considerations: [1] the fitness of the issues for judicial decision and [2] the hardship to the parties of withholding court consideration." *Thomas*, 220 F.3d at 1141(internal quotation marks and citation omitted).

■ "A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Winter v. California Medical Review, Inc.*, 900 F.2d 1322, 1325 (9th Cir.1989) (internal quotation marks and citation omitted). In *Public Service Commission of Utah v. Wycoff Co.*, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952), the Supreme Court stated that "the declaratory judgment procedure will not be used to preempt and prejudice issues that are committed for initial decision to an administrative body." *Id.* at 246, 73 S.Ct. 236. Our past decisions have explicitly mandated that an agency action be final before a declaratory judgment action is ripe: "the ripeness doctrine was designed ...'to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by challenging parties.'" *Lee Pharmaceuticals v. Kreps*, 577 F.2d 610, 618 (9th Cir.1978) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). *See also Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 (9th Cir.2001); *Dietary Supplemental Coalition, Inc. v. Sullivan*, 978 F.2d 560, 562 (9th Cir.1992) ("The fitness element requires ... a final agency action"); *Boating Industry Ass'ns v. Marshall*, 601 F.2d 1376, 1384(9th Cir.1979).

■ The fitness aspect of prudential ripeness is not satisfied here because further factual development is needed to establish what standard Oregon will actually

apply to the federal water claims. The United States and the Tribes sought a declaration of their water rights because the Adjudication allegedly embraced a standard contrary to those rights. But the Adjudication has not yet embraced *anything*. At most, the Adjudication announced a starting point in analyzing the federal claims. This announcement in no way binds the administrative panels that will hear the contests in the Adjudication. Nor does it bind the Water Department when it considers those panels' proposed orders and then issues its final administrative findings. Nor does it bind the Oregon courts when they review the Water Department's findings. Oregon has not yet applied any final standard to the water claims of the United States and the Tribes. It is possible that the standards applied by the contest panels, the Water Department, and the Oregon courts could differ from the standard announced in the Preliminary Evaluation.

This case also fails to satisfy the fitness aspect of prudential ripeness because it is a challenge to an agency action that is nowhere near final. There remain at least two steps in the Adjudication in which the Water Department could alter the standard it uses. The panels that hear the contests can abandon the Preliminary Evaluation. And the Water Department can set aside the panels' conclusions when the Department issues its final findings. This agency decision will then be subject to review by the Oregon courts.

Prudential ripeness is also absent from this case because there is no hardship for the United States and the Tribes to wait for additional factual development. At a minimum, the United States Supreme Court will remain open to the Tribes and the United States upon the completion of the Oregon Adjudication for final review on grounds that the Adjudication applied the incorrect standard. A declaration of water rights from a federal court today would provide no relief in any event. The district court's declaratory judgment still left to the Adjudication the actual calculation of the amounts of water that will need to flow to the United States and the Tribes. The distribution of water—the ultimate relief sought by all of the parties in this case—cannot occur until the Adjudication is completed, regardless of whether the federal courts weigh in more than we already have on the standard for measuring the federal water rights.

Finally, it is of no consequence that both the *Adair I* and *II* courts implicitly considered that the legal issues presented were sufficiently ripe for determination. In *Adair I* and *II*, the dispute was whether the Tribes had *any* right to water. That issue was purely legal and separate from any proceedings in the Adjudication. By contrast, the dispute in this case is wholly about the Adjudication: the United States and the Tribes seek a clarification of the *Adair* standard to determine if the Preliminary Evaluation announced the right standard. That question can only be answered when the Adjudication is complete.

## III

We hold that this dispute is not ripe for federal judicial determination. We do not reach the challenges to the district court's exercise of jurisdiction or the merits of the declaratory judgment. We VACATE the district court's judgment and REMAND this case to the district court to enter an order staying all federal proceedings pending completion of the Oregon Adjudication and related appellate review.

Each party shall bear its own costs in this appeal.