**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MONTANA ENVIRONMENTAL INFORMATION CENTER; SIERRA CLUB, | No. 13-35107 |
| *Plaintiffs-Appellants*, | D.C. No. 6:12-cv-00034-DLC |
| v. | |
| TRACY STONE-MANNING, in her official capacity as Director of the Montana Department of Environmental Quality, | OPINION |
| *Defendant-Appellee*, | |
| and | |
| SPRING CREEK COAL COMPANY LLC; GREAT NORTHERN PROPERTIES LIMITED PARTNERSHIP; CROW TRIBE OF INDIANS; INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 400; WESTERN ENERGY COMPANY; WESTMORELAND RESOURCES, INC.; NATURAL RESOURCE PARTNERS L.P., | |
| *Intervenor-Defendants–Appellees*. | |

Appeal from the United States District Court
for the District of Montana
Dana L. Christensen, Chief District Judge, Presiding

Argued and Submitted
May 12, 2014—Seattle, Washington

Filed September 11, 2014

Before: Diarmuid F. O'Scannlain, Andrew J. Kleinfeld,
and Marsha S. Berzon, Circuit Judges.

Opinion by Judge O'Scannlain

## SUMMARY[*]

### Environmental Law / Ripeness / Standing

The panel affirmed the dismissal for lack of subject-matter jurisdiction of a citizen suit claiming that the Director of the Montana Department of Environmental Quality would violate duties imposed by the Surface Mining Control and Reclamation Act by approving a pending application for a mining permit.

The panel held that the plaintiffs lacked standing, and their claims for declaratory and injunctive relief were not ripe. The panel concluded that the plaintiffs' alleged injury was not imminent because, even assuming *arguendo* that the Director would not do a proper cumulative hydrologic impact assessment under the Act, the plaintiffs' allegations did not establish a substantial risk that the Director would grant the permit application at all. Without deciding whether the firm

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

prediction rule applied under the circumstances of this case, the panel held that the rule's standards for ripeness were not met because the panel could not make a firm prediction that the Director would grant the mining permit application.

---

## COUNSEL

Walton D. Morris, Jr., Morris Law Office, P.C., Charlottesville, Virginia, argued the cause on behalf of plaintiffs-appellants. Megan Anderson O'Reilly, Western Environmental Law Center, Taos, New Mexico, filed the opening brief. With her on the opening brief were Morris and Shiloh Hernandez, Western Environmental Law Center, Helena, Montana. Hernandez filed the reply brief. With her on the reply brief were O'Reilly and Morris.

Dana David, Department of Environmental Quality, Helena, Montana, argued the cause and filed the brief on behalf of defendant-appellee.

John C. Martin, Crowell & Moring LLP, Washington, D.C., argued the cause on behalf of defendants-intervenors-appellees. Sherrie A. Armstrong, Crowell & Moring LLP, Washington, D.C., filed the brief. With her on the brief were Martin; Kristen L. Nathanson, Crowell & Moring LLP, Washington, D.C.; Andrew C. Emrich, Holland & Hart LLP, Greenwood Village, Colorado; Patrick R. Day, Holland & Hart LLP, Cheyenne, Wyoming; and William W. Mercer, Holland & Hart LLP, Billings, Montana.

Christopher B. Power, Dinsmore & Shohl LLP, Charleston, West Virginia, filed the brief for Amicus Curiae Interstate Mining Compact Commission, in support of the defendants-

intervenors-appellees. With him on the brief were Robert M. Stonestreet, Dinsmore & Shohl LLP, Charleston, West Virginia, and Gregory E. Conrad, Interstate Mining Compact Commission, Herndon, Virginia.

Ashley Brown, Alaska Department of Law, Anchorage, Alaska, filed the brief for Amicus Curiae State of Alaska, in support of defendants-intervenors-appellees. With her on the brief was Michael C. Geraghty, Alaska Department of Law, Anchorage, Alaska.

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide whether a challenge to potential approval of a surface mining permit is ripe for judicial review.

### I

Montana Environmental Information Center and Sierra Club (collectively, "MEIC") sued Tracy Stone-Manning, the Director of the Montana Department of Environmental Quality, in her official capacity. MEIC claims that Stone-Manning *will* violate duties imposed by the Surface Mining Control and Reclamation Act ("SMCRA"), 30 U.S.C. §§ 1201–1328, by approving a pending application for Area B of the Rosebud Mine. Invoking the statute's citizen-suit provision, 30 U.S.C. § 1270(a)(2), MEIC asked for declaratory and injunctive relief.

A

SMCRA establishes a "cooperative federalism" regime for mining regulation. *See Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 289 (1981). Under SMCRA, Congress "offer[s] States the choice of regulating . . . according to federal standards or having state law pre-empted by federal regulation." *New York v. United States*, 505 U.S. 144, 167 (1992) (citing *Hodel*, 452 U.S. at 288); *see also* 30 U.S.C. § 1253.

Montana adopted a regulatory program for non-federal lands, *see* Mont. Code Ann. §§ 82-4-201 to -254, with the approval of federal authorities, 30 C.F.R. § 926.10. Montana also "enter[ed] into a cooperative agreement with [the federal government] to provide for State regulation of surface coal mining and reclamation operations on Federal lands within the State." 30 U.S.C. § 1273(c); *accord* 30 C.F.R. § 926.30.

B

MEIC argued that SMCRA requires Stone-Manning to withhold approval of any permit application until she finds that a cumulative hydrologic impact assessment ("CHIA") "has been made by the regulatory authority and the proposed operation ["of all anticipated mining in the area"] has been designed to prevent material damage to hydrologic balance outside permit area." *See* 30 U.S.C. § 1260(b)(3). According to MEIC, this CHIA duty "effectively impose[s]" on Stone-Manning three subsidiary duties to: (1) "formulate and apply meaningful, objective material damage criteria that define the conditions that would constitute 'material damage to the hydrologic balance' outside the proposed permit area," (2) "include among the material damage criteria so

formulated and applied each Montana water quality standard applicable to each surface or groundwater resource that the proposed mine may affect," and (3) "rationally and reasonably find, before approving any application for a new or significantly revised mining permit, that the proposed surface coal mining operation has been designed to prevent material damage to the hydrologic balance outside the proposed permit area."

MEIC alleged that Stone-Manning and her predecessors "have engaged in a pattern and practice of approving applications for permits to conduct surface coal mining and reclamation operations without" complying with the subsidiary duties. This pattern purportedly shows that Stone-Manning will not follow SMCRA when considering Application 184, the pending application for a permit revision for Area B of the Rosebud Mine. MEIC asked for relief in the form of a declaratory judgment and "[a]n order compelling [Stone-Manning] to comply with" the subsidiary duties.

C

In the district court, Stone-Manning moved for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Intervenors[1] moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). The district court granted both motions, relying on four independently

---

[1] The district court granted a motion to intervene filed by the Crow Tribe of Indians, Great Northern Properties Limited Partnership, Natural Resource Partners L.P., Spring Creek Coal LLC, Western Energy Company, Westmoreland Resources, Inc., and International Union of Operating Engineers, Local 400.

sufficient reasons, including lack of ripeness.[2]  MEIC timely appealed.

## II

MEIC argues on appeal that the district court erred in ruling that its claims are not ripe.  It invokes the firm prediction rule that originated in Justice O'Connor's concurrence in *Reno v. Catholic Social Services*, 509 U.S. 43, 67 (1993) (O'Connor, J., concurring in the judgment). Intervenors contend that MEIC lacks standing to pursue an unripe claim.  We first analyze the constitutional limitations on federal jurisdiction and then assess the impact of the firm prediction rule.

### A

#### 1

Article III of the Constitution limits the jurisdiction of federal courts to "cases" and "controversies." U.S. Const. art. III, § 2.  To enforce this constitutional limitation, the Supreme Court has articulated numerous doctrines that restrict the types of disputes that federal courts will entertain, including standing and ripeness.[3]

---

[2] Because oral argument has already occurred, we deny MEIC's motion to expedite oral argument as moot.

[3] We are concerned here with the constitutional aspects of standing and ripeness.  We need not analyze prudential standing or prudential ripeness. *See Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2347 (2014) (refusing to "resolve the continuing vitality of the prudential ripeness doctrine").

Constitutional standing has three components:

> [A] plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Friends of the Earth, Inc. v. Laidlaw Envt'l Srvs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992), and *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)).

A dispute is ripe in the constitutional sense if it "present[s] concrete legal issues, presented in actual cases, not abstractions." *Colwell v. HHS*, 558 F.3d 1112, 1123 (9th Cir. 2009) (internal quotation marks omitted). In the context of a declaratory judgment suit, the inquiry "depends upon 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *United States v. Braren*, 338 F.3d 971, 975 (9th Cir. 2003) (quoting

*Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Ripeness and standing are closely related because they "originate from the same Article III limitation." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 n.5 (2014) (internal quotation marks omitted) ("[T]he Article III standing and ripeness issues in this case boil down to the same question." (internal quotation marks omitted)); *id.* at 2345–46 (citing *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 625–26 n.1 (1986), a ripeness case, as part of a discussion of standing). As a result, we have previously recognized that "in many cases, ripeness coincides squarely with standing's injury in fact prong." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 1999) (en banc) ("The constitutional component of the ripeness inquiry is often treated under the rubric of standing . . . . Indeed, because the focus of our ripeness inquiry is primarily temporal in scope, ripeness can be characterized as standing on a timeline.").

2

Regardless of whether we use the verbal formulations developed for standing or the ones developed for ripeness, our analysis is materially unchanged.

a

MEIC asserts that its members will be harmed by mining activity that will occur because Stone-Manning will fail to comply with her CHIA duty. MEIC does not challenge the approval of past applications; it challenges only the anticipated approval of Application 184, which is currently

pending. Because the alleged injury has not yet occurred, MEIC is not suing over an "actual" injury. We therefore must determine whether MEIC's alleged injury is "imminent."

An injury is imminent "if the threatened injury is 'certainly impending,' or there is a '"substantial risk" that the harm will occur.'" *SBA List*, 134 S. Ct. at 2341 (quoting *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147, 1150 n.5 (2013)). MEIC emphasizes that it alleged a pattern or practice of Stone-Manning granting applications without doing proper CHIAs. Assuming *arguendo* that those allegations establish that Stone-Manning will not do a proper CHIA for Application 184, they do not establish a substantial risk that Stone-Manning will grant the application at all. MEIC's complaint is devoid of allegations about the likelihood of Stone-Manning approving Application 184.[4]

Such omission is of crucial importance. MEIC argues that its members will be injured by mining operations that have not been subjected to a proper CHIA. But that mining will occur only if Stone-Manning grants the application. MEIC's complaint did not allege a "substantial risk" of harm because it did not allege a "substantial risk" that Stone-Manning will approve the application.

---

[4] MEIC alleges that the Department of Environmental Quality approved Applications 161, 164, 166, 170, 172, 174, 175, 178, 180, and 182, but does not allege anything about the other applications numbered between 161 and 182. We do not know whether the unmentioned applications were approved or even whether they were similar to the mentioned ones. The most that we can infer, then, is that the department approved at least ten of the twenty-two applications in that range. Such frequency, about 45 percent, does not suffice to show a substantial risk that Stone-Manning will approve Application 184.

Even if we assume that MEIC can bring this suit on behalf of its members, *see Laidlaw*, 528 U.S. at 181, its members do not have standing. They have not suffered an "actual or imminent" injury in fact. *Id.* at 180.

b

Analyzing the sufficiency of MEIC's complaint under the constitutional ripeness standard yields the same answer for the same reasons. *See Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688–89 & n.6 (2d Cir. 2013) (considering ripeness and standing together because "[c]onstitutional ripeness . . . is really just about" the injury-in-fact requirement). Because MEIC does not allege a substantial risk that Stone-Manning will grant the application, we cannot characterize this dispute as "a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Braren*, 338 F.3d at 975. This dispute is more an "abstraction[]" than an "actual case" because the supposed injury has not materialized and may never materialize. *Colwell*, 558 F.3d at 1123; *see also Alcoa, Inc. v. Bonneville Power Admin.*, 698 F.3d 774, 793 (9th Cir. 2012) ("We have dismissed claims that are based solely on harms stemming from events that have not yet occurred, and may never occur, because the plaintiffs raising such claims have not suffered an injury that is concrete and particularized enough to survive the standing/ripeness inquiry." (internal quotation marks omitted)).

B

To counter the argument that its claims are not ripe, MEIC invokes the firm prediction rule. If the case is ripe

under the firm prediction rule, MEIC argues, then it must also have standing to bring the case.

1

The firm prediction rule originated in Justice O'Connor's concurring opinion in *Catholic Social Services*. In that case, plaintiffs challenged regulations governing an "alien legalization program." *CSS*, 509 U.S. at 45. In the context of this "benefit-conferring rule," Justice O'Connor explained:

> If it is "inevitable" that the challenged rule will "operat[e]" to the plaintiff's disadvantage—if the court can make a firm prediction that the plaintiff will apply for the benefit, and that the agency will deny the application by virtue of the [challenged] rule—then there may well be a justiciable controversy that the court may find prudent to resolve.

*CSS*, 509 U.S. at 69 (O'Connor, J., concurring in the judgment) (first alteration in original).

Although the Supreme Court did not adopt Justice O'Connor's standard, we did in *Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431, 1436 (9th Cir. 1996) (applying the firm prediction rule to a challenge to regulations governing permission to travel to Cuba). *See also Immigrant Assistance Project of L.A. Cnty. Fed'n of Labor (AFL-CIO) v. INS*, 306 F.3d 842, 861–62 (9th Cir. 2002) (applying the firm prediction rule to a challenge to INS policies and practices governing illegal immigrants' applications for legalization).

2

Without deciding whether the firm prediction rule applies under the present circumstances, its standards are not met in this case.  We can no more make a firm prediction that Stone-Manning will grant the application than we can conclude that there is a substantial risk of her doing so.

Our precedent has not determined exactly how likely an event must be for a court to make a firm prediction that it will occur.   Nonetheless, two considerations provide some guidance.  First, Justice O'Connor, the creator of the test, equated being able to make a firm prediction that an event would occur with that event being "inevitable."   *CSS*, 509 U.S. at  69 (O'Connor, J., concurring in the judgment) ("If it is 'inevitable' that the challenged rule will 'operat[e]' to the plaintiff's disadvantage—if the court can make a firm prediction that the plaintiff will apply for the benefit, and that the agency will deny the application by virtue of the rule . . . ." (quoting *Reg'l Rail Reorganization Act Cases*, 419 U.S. 102, 143 (1974))).

Second, our previous cases have made firm predictions when the plaintiff's injury was nearly certain.  In *Freedom to Travel Campaign*, for example, the challenged regulation permitted educational travel to Cuba only if the proposed travel plans included at least one of two defined activities. 82 F.3d at 1436.  Because the plaintiff's "educational travel plans include[d] neither activity and would be therefore summarily rejected[,] its claims [were] ripe under [the firm prediction rule]." *Id.*  Similarly, in *Immigrant Assistance Project*, we described the possibility that the government would deny plaintiffs' applications on any ground other than the challenged rule as "remote."  306 F.3d at 862.

We cannot make a firm prediction about whether or not Stone-Manning will grant the application. MEIC has failed to allege that Stone-Manning's approval is inevitable or even particularly likely. Indeed, it includes no allegations at all about the likelihood of Stone-Manning approving Application 184.[5]

### III

For the foregoing reasons, the district court correctly dismissed the case for lack of subject-matter jurisdiction.[6]

**AFFIRMED.**

---

[5] Because the issue of ripeness is dispositive, we do not address the district court's alternative bases for dismissal.

[6] MEIC has not argued on appeal, and did not argue below, that it should be permitted to amend its complaint to add allegations that might affect our ripeness analysis. *See Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 901 (9th Cir. 2013) (ruling that arguments not presented in the opening brief are waived); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 749 (9th Cir. 2006) (refusing to order the district court to allow amendment to a pleading when the party did not request leave to amend below). Instead, it limited its argument to asking that we reverse and remand for proceedings on the merits of its claims. We cannot do so.