NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 2 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

VICTORIA SMITH, on behalf of herself and all others similarly situated,

Plaintiff-Appellant,

v.

HEALTH CARE SERVICE CORPORATION,

Defendant-Appellee,

and

JOHN DOES 1-10; CARING FOR MONTANANS, INC., Blue Cross and Blue Shield of Montana, Inc.,

Defendants.

No.    23-35508

D.C. No. 1:22-cv-00050-SPW

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Montana
Susan P. Watters, District Judge, Presiding

Argued and Submitted April 3, 2024
Portland, Oregon

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: OWENS and FRIEDLAND, Circuit Judges, and SILVER,[**] District Judge.
Partial concurrence and partial dissent by Judge SILVER.

Victoria Smith appeals from the district court's judgment dismissing her claims under Federal Rule of Civil Procedure 12(b)(1). Smith alleges that Blue Cross[1] unlawfully enforced subrogation in violation of Montana's made-whole doctrine and (accordingly) in breach of their contract. *See Rolan v. New W. Health Servs.*, 504 P.3d 464, 473-74 (Mont. 2022) ("The made-whole doctrine does not stem from the terms of a contract but rather is provided by the equitable principles inherent in the *Skauge* ruling." (quotation marks omitted) (referencing *Skauge v. Mountain States Tel. & Tel. Co.*, 565 P.2d 628, 632 (Mont. 1977))). As the parties are familiar with the facts, we do not recount them here. We review a district court's dismissal for lack of ripeness de novo. *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022). We review questions of law de novo. *Chappel v. Lab'y Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000).

We reverse the district court's conclusion that Smith's claims are not ripe for adjudication. Because we affirm the district court's holding that Rawlings Inc.'s

---

[**] The Honorable Roslyn O. Silver, United States District Judge for the District of Arizona, sitting by designation.

[1] Health Care Service Corporation does business as Blue Cross and Blue Shield of Montana. Because both parties and the district court refer to the defendant as "Blue Cross," we do the same here.

2

second letter to Smith ("the Rawlings letter") did not constitute enforcement of subrogation, we conclude that Smith failed to state a claim for unlawful subrogation. We remand to the district court with instructions to grant Smith leave to amend her complaint to include additional factual allegations.

1. Smith's lawsuit is ripe. "A dispute is ripe in the constitutional sense if it present[s] concrete legal issues, presented in actual cases, not abstractions." *Mont. Env't Info. Ctr. v. Stone-Manning*, 766 F.3d 1184, 1188 (9th Cir. 2014) (quotation marks omitted). Here, there is a concrete legal issue whether the Rawlings letter constitutes unlawful enforcement. Smith alleged an injury sufficient for standing (and ripeness) through "temporary loss of use of [her] money" because her attorneys had held Smith's settlement money in trust pending resolution of Blue Cross's alleged enforcement. *Van v. LLR, Inc.*, 962 F.3d 1160, 1164 (9th Cir. 2020) (per curiam); *see also Twitter*, 56 F.4th at 1173 ("[T]he constitutional component of ripeness is synonymous with the injury-in-fact prong of the standing inquiry." (quotation marks omitted)).

2. Smith failed to state a claim. As an initial matter, the question whether the asserted conduct violates Montana's made-whole doctrine is a question of law. Although actions short of litigation in court could constitute enforcement, and although Montana courts have sometimes used "enforce" and "assert" interchangeably, we do not believe Montana courts would hold that the Rawlings

3

letter, even in the context of Smith's other alleged communications with Blue Cross, was the sort of conduct that triggers an insurer's duty to conduct a made-whole analysis under Montana's made-whole doctrine. *See Enforce*, Black's Law Dictionary (11th ed. 2019) ("[T]o compel obedience to.").

Importantly, Blue Cross did not withhold or retain money that would belong to Smith under the made-whole doctrine, as has been described by Montana courts as "de facto subrogation." *See, e.g.*, *Rolan v. New W. Health Servs.*, 307 P.3d 291, 296 (Mont. 2013) (insurer received reimbursements and retained them); *Diaz v. State*, 313 P.3d 124, 127 (Mont. 2013) (explaining that policy terms allowing an insurer to "avoid payment for covered medical expenses" without a made-whole analysis "allows the Plan to exercise de facto subrogation"). Smith's cited cases are inapposite because they involved insurers who retained or withheld money and/or addressed whether Montana's made-whole doctrine applies even when there is contract language allowing subrogation—circumstances that do not exist here. *See, e.g.*, *Swanson v. Hartford Ins. Co. of the Midwest*, 46 P.3d 584, 586 (Mont. 2002) (addressing whether Montana's made-whole doctrine applied despite contract language to the contrary, in a case where the insurer initially refused to endorse and release a settlement check); *Youngblood v. Am. States Ins. Co.*, 866 P.2d 203, 204 (Mont. 1993) (holding that a policy that "required subrogation . . . pursuant to Oregon law" was unenforceable in Montana).

4

We are not aware of Montana cases addressing the question here: what constitutes "assertion" or "enforcement" when the allegation is that an insurer is *seeking* money from an insured. Although the Rawlings letter was sent from the subrogation department and had a boilerplate heading with a payment address, the letter did not say Blue Cross had a lien, provide a final amount owed, or demand payment. Instead, the letter provided a chart of medical payments made on Smith's behalf and simply requested more information, including the status of the claim.

Given the district court's dismissal based on ripeness, Smith has not yet had an opportunity to amend her complaint. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (stating that leave to amend should be granted unless "the pleading could not possibly be cured by the allegation of other facts" (citation omitted)). Therefore, we remand to the district court with instructions to grant Smith leave to amend her complaint to include additional factual allegations.

Each party shall bear its own costs on appeal.

**AFFIRMED in part, REVERSED in part, and REMANDED.**



*Smith v. Health Care Service Corp.,* No. 23-35508
Silver, District Judge, concurring in part and dissenting in part:

I agree Smith's lawsuit is ripe, but I believe the current complaint, supplemented by properly incorporated documents, stated claims for relief. The record includes two letters depicting repeated attempts by Smith to determine if Blue Cross would pursue subrogation. Eventually, Smith received a letter identifying exact amounts and directing her to make payment. In my view, that was sufficient to establish Blue Cross may have attempted subrogation contrary to Montana law. Therefore, I respectfully concur in part and dissent in part.

During the proceedings below and in briefing this appeal, the parties agreed there were two letters that should be deemed incorporated into the complaint. The first letter, dated February 11, 2022, was from Smith's counsel to Rawlings. That letter explained that in early 2021, Smith's counsel had sent a letter requesting information about a possible lien Blue Cross might wish to assert. Blue Cross had responded by explaining Rawlings would represent it regarding a "potential lien." Smith's counsel then sent a letter to Rawlings, asking for information about the potential lien. Rawlings did not respond. The February 11, 2022, letter recounted this history and again asked Rawlings for an explanation of any potential lien. That letter noted Smith believed no "subrogation claim will lie as Ms. Smith will pay attorney fees and costs and will never be made whole." Rawlings responded with the five-page letter now referred to as the "Rawlings letter."

1

The letterhead for the Rawlings letter identified the sender as "The Rawlings Company LLC, Subrogation Division." The first page of the letter indicated Rawlings had generated a unique file number for the expenses associated with Smith's hip implant replacement. The letter's first page also stated the letter's other pages were "a summary of the medical expenses paid by" Blue Cross for Smith's hip implant replacement. The first page warned Smith the amount of Rawlings' "claim **may increase**," and Rawlings requested "an update on this claim." The remaining four pages listed each of the medical procedures Smith had undergone in connection with her hip implant replacement, including each procedure's cost. Each of those pages stated Smith should "Make Checks Payable To Rawlings & Associates" and "Please write [Smith's unique file] number on your check."

The majority concludes the Rawlings letter and the other communications are not enough to support a claim for relief. But viewing the Rawlings letter in the light most favorable to Smith, it conveyed the "Subrogation Division" believed there was a claim that "**may increase**," and Smith should provide an "update on this claim." The letter included exact amounts and repeatedly instructed Smith how to make payment. So viewed, a reasonable person could conclude the letter was demanding payment, *i.e.* attempting to enforce subrogation. In fact, it seems implausible that a letter containing exact amounts and repeated instructions how to

2

make payment on a pending "claim" would *not* qualify as an attempt to assert subrogation. Given the applicable standard at the motion to dismiss stage, Smith's allegations and the two letters were enough to state claims for relief.

The majority argues existing Montana law addresses subrogation situations where insurers "retained or withheld money." Thus, the majority believes it is an open question "what constitutes 'assertion' or 'enforcement' when the allegation is that an insurer is *seeking* money from an insured." It is true there is no Montana authority addressing whether the standard for determining if subrogation is being enforced should be different if an insurer is pursuing subrogation by withholding money instead of seeking to recover money already in the insured's possession. But I see no basis to conclude Montana's "made whole" doctrine might differentiate between these two situations. Blue Cross itself seems to have conceded there is no distinction in that its position on appeal is that a lawsuit brought by Blue Cross against Smith would be an attempt to enforce subrogation. In my view, the fact that Blue Cross is demanding repayment instead of withholding money is a distinction without a difference.

Smith will have the opportunity to amend her complaint to include all of the parties' interactions, but Montana law is strict regarding insurers enforcing subrogation. I believe the current complaint supplemented by the parties' letters stated claims for relief.